Patrick N. Keegan, Esq. (SBN: 167698)
Jason E. Baker, Esq. (SBN: 197666)
Brent Jex, Esq. (SBN: 235251)
**KEEGAN & BAKER, LLP**
4370 La Jolla Village Drive, Suite 640
San Diego, CA 92122
Telephone: (858) 552-6750
Facsimile: (858) 552-6749

Attorneys for Plaintiff and Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

JASON CLAVER, individually and on behalf of all other persons similarly situated and on behalf of the general public,

Plaintiff,

vs.

COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY, a California corporation,

Defendant.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 08 CV 0817 L AJB

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) BY DEFENDANT COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY**

Date:          August 25, 2008
Time:          10:30 a.m.
Location:    Courtroom 14
Judge:        Hon.  M.  James Lorenz

Complaint Filed:    May 16, 2008
Trial Date:            Unassigned

1

## TABLE OF CONTENTS

2    I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3    II.   SUMMARY OF RELEVANT FACTS ALLEGED IN THE COMPLAINT . . . . 2

4    III.  SUMMARY OF LAW REGARDING RULE 12(B)(6) MOTIONS . . . . . . . . . . 3

5    IV.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6          A.    Under Well-Settled California Law, Any Agreement That Purports To
                 Create An "Independent Contractor" Relationship For Purposes Of Third
7                Party Liability Is Invalid As A Matter Of Law . . . . . . . . . . . . . . . . . . . . . . 4

8          B.    A Real Estate Salesperson May Be Both An "Employee" And
                 An "Independent Contractor" At The Same Time, Depending On The
9                Legal Context . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10         C.    A Real Estate Salesperson Is <u>Always</u> Considered An Employee Of The
                 Broker For Purposes Of Third Party Liability . . . . . . . . . . . . . . . . . . . . . . . 6
11
                 1.    The Agency Relationship Between A Broker And
12                     Salesperson Regarding Third Party Liability Is Derived From
                       The Employer-Employee Relationship, And Not From A
13                     True Independent Contractor Relationship . . . . . . . . . . . . . . . . . . . 8

14               2.    California Courts And Treatises Already Recognize That For
                       Purposes Of Third Party Liability, The Salesperson Is Always
15                     The Employee Of The Broker . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16               3.    California Law Recognizes At Least Two Other Situations Where
                       The Salesperson Is Always Considered The Employee Of The
17                     Broker . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18         D.    Under Well-Settled California Law, An Employer Cannot Pass Along
                 The Ordinary Costs Of Doing Business To Its Employees . . . . . . . . . . . . 11
19
                 1.    An Employer Cannot Require Its Employees To Insure Against
20                     The Employer's Losses And Expenses, Unless The Employer
                       Complies With California's Employee Bond Law . . . . . . . . . . . . 12
21
                 2.    An Employer Must Indemnify Its Employees For All Expenses
22                     Paid By The Employee On Behalf Of The Employer . . . . . . . . . . 13

23         E.    The Complaint Adequately Alleges That Defendant's Actions Are
                 "Unlawful" And "Unfair" Under California's Unfair Competition Law . 14
24
                 1.    The Complaint Adequately Alleges That Defendant's Actions
25                     Are "Unlawful" Under The UCL . . . . . . . . . . . . . . . . . . . . . . . . . 14

26               2.    The Complaint Adequately Alleges That Defendants Actions
                       Are "Unfair" Under The UCL . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

27

28

3. The Complaint Adequately Alleges That Plaintiff Suffered Injury
In Fact From Defendant's Violation Of The UCL . . . . . . . . . . . . . 16

F. Making The Broker Responsible For Paying For His Own Insurance
Premiums Would Encourage Greater Oversight, And Reduce The
Likelihood Of Harm To Third Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

G. The Complaint Pleads That Purchasing Insurance Is Mandatory,
And Defendant Submits No Evidence To The Contrary . . . . . . . . . . . . . 18

H. Alternatively, The Court Should Grant Plaintiff Leave To File An
Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1

**TABLE OF AUTHORITIES**

2

**CASES**

*Allen v. City of Beverly Hills,*
911 F.2d 367 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19

*Bank v. Pitt,*
928 F.2d 1108 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cahill v. Liberty Mut. Ins. Co.,*
80 F.3d 336 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*California Emp. Stab. Com. v. Morris*
(1946) 28 Cal.2d 812 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*California Emp. Stab. Com. v. Norins Realty Co.*
(1946) 29 Cal.2d 419 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*California Real Estate Loans, Inc. v. Wallace*
(1993) 18 Cal.App.4th 1575 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
(1999) 20 Cal.4th 163 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Chang v. Chen,*
80 F.3d 1293 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*DeCarlo v. Fry,*
141 F.3d 56 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Doe v. United States,*
58 F.3d 494 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19

*Farmers Ins. Exhc. v. Sup. Ct.*
(1992) 2 Cal.4th 377 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Foman v. Davis,*
371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19

*Gipson v. Davis*
(1963) 215 Cal.App.2d 190 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 10, 17

*Grand v. Griesinger*
(1958) 160 Cal.App.2d 397 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Grubb & Ellis Co. v. Spengler*
(1983) 143 Cal.App.3d 890 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11

*Hudgins v. Neiman Marcus Group, Inc.*
(1995) 34 Cal.App.4th 1109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kasky v. Nike, Inc.*
(2002) 27 Cal.4th 939 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kerr's Catering Service v. Dept. of Ind. Relations*
(1962) 57 Cal.2d 319 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Motors, Inc. v. Times Mirror Co.*
(1980) 102 Cal.App.3d 735 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Navarro v. Block,*
250 F.3d 729 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Payne v. White House Properties, Inc.*
(1980) 112 Cal.App.3d 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Prachasaisoradej v. Ralphs Grocery Co., Inc.*
(2007) 42 Cal.4th 217 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Quillian v. Lion Oil Co.*
(1979) 96 Cal.App.3d 156 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Reagan v. Keller Williams Realty, Inc.,*
2007 WL 2447021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 10

*Resnik v. Anderson & Miles*
(1980) 109 Cal.App.3d 569 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*
(1989) 48 Cal.3d 341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Tolentino v. Redhill Remax Realty,*
2003 WL 22873020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tyco Int'l Co. v. Sup. Ct.*
(1996) 45 Cal.App.4th 1093 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**STATUTES**
10 Cal. Code Reg.
     § 2725 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17
     § 2725(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

California Business & Professions Code
     § 10000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     § 10032 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     § 10032(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 10
     § 10132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     § 10137 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     § 10151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1

Labor Code
  § 221 ........................................................... 12, 14, 15
  § 224. ............................................................... 12
  § 2802 ........................................................... 14, 15
  §§ 400-410. .................................................. 12, 14, 15
  § 3357 ................................................................ 4
  § 3751(a) ............................................................ 11

5

**RULES**
Federal Rules of Civil Procedure
  Rule 15(a) ....................................................... 3, 19

7

**OTHER**
DLSE Enforcement Policies & Interpretations Manual,
  § 28.2 at 28-1 (2002 Update) ........................................ 4

IWC Wage Order 4-2001 ......................................... 12, 14, 15

Miller & Star, Miller and Starr California Real Estate,
  §3:19 (3d ed.) ...................................................... 5

Witkin, 3 Summary of Calif. Law,
  §3 p. 41 (10th ed.) ................................................. 9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.
## INTRODUCTION

Plaintiff seeks to represent a class of real estate salespersons seeking recovery of insurance expenses paid for by Plaintiff and Class members, which Defendant imposed on Plaintiff and Class members as a condition of their employment, despite the fact that the insurance is primarily for the Defendant's benefit.  Plaintiff and Defendant entered into an employment agreement titled "Independent Contractor Agreement," which required Plaintiff to pay for two types of insurance expenses: (1) professional liability insurance purchased directly from Defendant, which cost either a one-time annual fee of $1,295, or three payments totaling $1,445 per year; and (2) Plaintiff was required to purchase, at his own expense, a $100,000/$300,000 automobile insurance policy that named Defendant as an "additional insured."

Liability against Defendant is premised on two well-settled legal principles, both of which Defendant is challenging by way of its Rule 12(b)(6) motion:

1.    Any agreement between a real estate broker and salesperson that purports to create an "independent contractor" relationship for purposes of third-party liability is invalid as a matter of law (*California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.3th 1575 1581); and

2.    An employer cannot make employees the 'insurers of the employer's business losses.'" *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 1123.

Taken together and applied to the facts presented in this case, the Court is being asked to consider whether it is unlawful for a real estate broker to force its salespersons to pay for the broker's insurance against third-party liability.  As discussed further below, it is unlawful, an unfair business practice, and bad policy for a real estate broker to force its real estate salespersons to bear the costs of this insurance, and respectfully requests that the Court deny Defendant's Motion to Dismiss.

/ / /

## II.
## SUMMARY OF RELEVANT FACTS ALLEGED IN THE COMPLAINT

Defendant COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY (hereinafter "Coldwell Banker" or "Defendant") is a "real estate broker" as that term is defined by California's Business & Professions Code section 10131(a). Compl. ¶5. Plaintiff Jason Claver is a "real estate salesman" as that term is defined by California's Business & Professions Code section 10132. Compl. ¶4. Coldwell Banker hired Claver as a real estate salesperson on May 23, 2006 when the parties executed a document titled "INDEPENDENT CONTRACTOR AGREEMENT" (hereinafter the "Agreement"). Compl. ¶6 and Exh. "A" thereto.

Schedule "C" to the Agreement contains the terms and conditions of a program Defendant calls the "Coldwell Banker Benefits Program" (hereinafter the "Program"). Compl. ¶7 and Exh. "B" thereto. Under the Program, Plaintiff and Class members were required to purchase, and did in fact purchase out of their own personal funds, insurance and/or indemnification related to legal claims brought by third parties against COLDWELL BANKER or Plaintiff and Class members or both, "for money damages or rescission, including, but not limited to, the service of a suit or institution of arbitration proceedings against COLDWELL BANKER or [Plaintiff and Class members], arising out of [Plaintiff and Class members]'s alleged acts or omissions under the Independent Contractor Agreement." Ibid. Plaintiff and Class members were required to pay directly to Defendant either a one-time fee of $1,295, or three payments totaling $1,445 per year for the professional liability insurance provided by the Program. Exh. "B" to Compl., p. 1 (bottom).

Under page 2, section 5(c) of the Agreement, Plaintiff and Class members were required to purchase, and did in fact purchase out of their own personal funds, automobile insurance with minimum policy limits of $100,000/$300,000 liability coverage and $100,000 property damage coverage, and to name Defendant Coldwell Banker as an additional insured. Compl. ¶8 and Exh. "C" thereto.

/ / /

### III.
## SUMMARY OF LAW REGARDING RULE 12(B)(6) MOTIONS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint should not be dismissed unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Ibid.*

As a practical matter, leave to amend is almost always granted by the court. Rule 15(a) of the Federal Rules of Civil Procedure expressly states leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir. 1990). In the Ninth Circuit, "[t]his policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (reversing district court's denial of leave to amend); *Foman v. Davis,* 371 U.S. 178, 182 (1962). Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one more chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 112 (11th Cir. 1991); *DeCarlo v. Fry*, 141 F.3d 56, 62 (2nd Cir. 1998). "Dismissal without prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996). Indeed, leave to amend should be granted even if not expressly requested by plaintiff, unless it is clear that the complaint cannot be cured by the allegation of different facts. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### IV.
## DISCUSSION

Defendant's motion challenges whether it is unlawful for a real estate broker to force its salespersons to pay for the broker's insurance against third-party liability. Defendant's

1   liability is predicated on two well-settled legal principles, both of which Defendant

2   challenges by way of its Rule 12(b)(6) motion:

3      1.    Any agreement between a real estate broker and salesperson that purports to

4              create an "independent contractor" relationship for purposes of third-party

5              liability is invalid as a matter of law (*California Real Estate Loans, Inc. v.*

6              *Wallace* (1993) 18 Cal.App.3th 1575 1581); and

7      2.    An employer cannot make employees the 'insurers of the employer's business

8              losses.'" *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109,

9              1123.

10      Because Plaintiff's Complaint adequately alleges claims against Defendant predicated

11   on these two well-settled legal principles, the Court should deny Defendant's Motion to

12   Dismiss.

13   **A.    Under Well-Settled California Law, Any Agreement That Purports To Create**
         **An "Independent Contractor" Relationship For Purposes Of Third Party**
14       **Liability Is Invalid As A Matter Of Law**.

15      Defendant, citing to California Business & Professions Code section 10032(b), argues

16   that the "Independent Contractor Agreement" executed by Plaintiff and Defendant

17   conclusively establishes that the relationship between Plaintiff and Defendant was that of

18   broker-independent contractor for **all** purposes, including liability to third parties.  This

19   argument fails because it ignores the substantial field of California law, which provides that

20   insofar as liability to a third party is concerned, any agreement purporting to create a broker-

21   independent contractor relationship is invalid.[1]

22      Under Business & Professions Code section 10032(b):

23      A real estate broker and a real estate salesperson licensed under that broker
         may contract between themselves as independent contractors or as employer

24

---

25          [1]    This argument also ignores California's presumption of employment, as codified in
26   Labor Code § 3357, and the "multi-factor" or "economic realities" test as set forth by the California
     Supreme Court in *S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations* (1989) 48 Cal.3d 341.
27   See also DLSE Enforcement Policies & Interpretations Manual , § 28.2 at 28-1 (2002 Update) [party
     seeking to avoid liability has the burden of proving existence of independent contractor relationship].

28

---

and employee, **for purposes of their legal relationship with and obligations to each other**.

(Emphasis added)

Although a broker and salesperson may freely contract between each other for purposes of their legal relationship with and obligations ***to each other,*** the statute does not provide that they are free to contract between each other for purposes of their legal relationship with and obligations ***to third parties.*** See Miller & Star, Miller and Starr California Real Estate, §3:19 (3d ed.). Thus, the "Independent Contractor Agreement" signed by Plaintiff and Defendant does not conclusively establish a broker-independent contractor relationship between the parties in the context of their liability to third parties.

Furthermore, California case law clearly holds - in language that could not be more clear - that insofar as liability to a third party is concerned, any agreement purporting to create a broker-independent contractor relationship is invalid as a matter of law. *Reagan v. Keller Williams Realty, Inc.*, 2007 WL 2447021, citing *California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575, 1581; *Resnik v. Anderson & Miles* (1980) 109 Cal.App.3d 569, 572-73; *Payne v. White House Properties, Inc.* (1980) 112 Cal.App.3d 465, 470; *Gipson v. Davis Realty Co.*, 215 Cal.App.2d 190, 206-09. Thus, to the extent that the "Independent Contractor Agreement" purports to create a broker-independent contractor relationship for purposes of third party liability, the Agreement is invalid as a matter of law.

**B.    A Real Estate Salesperson May Be Both An "Employee" And An "Independent Contractor" At The Same Time, Depending On The Legal Context**.

"The answer to the question whether the relationship between a real estate broker and his real estate salesperson is one of employer and employee or one of principal and independent contractor depends upon the particular area of law one is examining." *Grubb & Ellis Co. v. Spengler* (1983) 143 Cal.App.3d 890, 895 [analyzing the different areas of law that have the been the forum of the nature of the broker-salesperson relationship]. For example, for purposes of federal employment taxes, a salesperson can elect to be treated **always** as an independent contractor. I.R.C. § 3508. For purposes of the administration and

enforcement of California's Real Estate Law (Bus. & Prof. Code §§ 10000 et seq.), the salesperson is **always** considered the employee of the broker.  *Grubb & Ellis Co. v. Spengler,* supra, 143 Cal.App.3d at 895, citing to Bus. & Prof. Code §§ 10132, 10137, 10151, 10160, 10177, subd. (h); *Grand v. Griesinger* (1958) 160 Cal.App.2d 397, 404-06.  For purposes of California's worker's compensation laws, the salesperson is **always** considered the employee of the broker.  Bus. & Prof. Code § 10032(b).

   For purposes of minimum wage requirements and unemployment insurance, the determination is a question of fact.  Id. at 898 [minimum wage]; *California Emp. Stab. Com. v. Morris* (1946) 28 Cal.2d 812, 818; see also *California Emp. Stab. Com. v. Norins Realty Co.* (1946) 29 Cal.2d 419; *California Emp. Stab. Com. v. Morris* (1946) 28 Cal.2d 812 [unemployment insurance].

        Thus, to determine the nature of the broker-salesperson relationship, it is necessary to consider the particular area of law one is examining, rather than merely relying on the parties' own characterization of the relationship, as argued by Defendant.  Here, the Complaint examines the area of third party liability.  As discussed below, California law is clear that insofar as liability to third parties is concerned, a salesperson is always considered the employee of the broker, and any agreement purporting to create an independent contractor relationship is invalid.

**C.    A Real Estate Salesperson Is <u>Always</u> Considered An Employee Of The Broker For Purposes Of Third Party Liability**.

        "For purposes of establishing tort liability, the California courts have held that a broker is liable under the doctrine of respondeat superior for the tortious acts of his salespeople during the course and scope of business because a salesperson is the agent of the broker."  (*Grubb & Ellis Co. v. Spengler*, supra, 143 Cal.App.3d at 895.)  In *Reagan v. Keller Williams Realty, Inc.*, 2007 WL 2447021, a Keller William's franchisee/licensee's salesperson negligently caused a motor vehicle accident on her way to an open house.  Although the salesperson and the employing broker/franchisee had entered into an independent contractor agreement, the Court held:

1    [T]he existence of the independent contractor agreement cannot be used as a
     defense against a third party liability claim as a matter of law. Bus. & Prof.
2    Code § 10032, subd. (a) states: "(a) All obligations created under Section
     10000, and following, all regulations issued by the commissioner relating to
3    real estate salespersons, and all other obligations of brokers and real estate
     salespersons to members of the public shall apply regardless of whether the
4    real estate salesperson and the broker to whom he or she is licensed have
     characterized their relationship as one of 'independent contractor' or of
5    'employer and employee.' ... The Court of Appeal has held: 'It is settled that
     for purposes of liability to third parties for torts, a real estate salesperson is the
6    agent of the broker who employs him or her. The broker is liable as a matter
     of law for all damages caused to third persons committed within the course and
7    scope of employment. [Citations.]'

8    (*Reagan* at *9, citing *California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.3th

9    1575, 1581; accord *Gipson v. Davis Realty Co.*, supra, 215 Cal.App.2d at pp. 201-203; see

10   also 2 Miller & Starr, Cal. Real Estate (3d ed.) §§ 3:18, 3:19 at pp. 93-104.)

11        Thus, for purposes of third party liability, the broker-salesperson relationship cannot

12   be characterized as that of an independent contractor when the salesperson is acting within

13   the scope of employment.[2]  Insofar as liability to a third party is concerned, any agreement

14   purporting to change the relationship from agent to independent contractor is invalid.[3]

15   Because Defendant and Plaintiff cannot legally create a broker-independent contractor

16   relationship for purposes of third party liability, it naturally follows that, for purposes of third

17   party liability, **Plaintiff is always considered the employee of Defendant**.

18   / / /

19   / / /

20   / / /

21   / / /

22

23        [2]    *Reagan* at *9, citing Bus. & Prof. Code § 10032, subd. (a); *California Real Estate
24   Loans, Inc. v. Wallace,* supra, 18 Cal.App.4th at p. 1581; *Gipson v. Davis Realty Co.*, supra, 215
     Cal.App.2d at pp. 206-209; 10A Cal.Jur.3d Brokers § 7; also 2 Miller & Starr, Cal. Real Estate,
25   supra, §§ 3:18, 3:19 at pp. 93-104.

26        [3]    *Reagan* at *9, citing *California Real Estate Loans, Inc. v. Wallace,* supra, 18
     Cal.App.4th at p. 1581; *Resnik v. Anderson & Miles* (1980) 109 Cal.App.3d 569, 572-573; *Payne*
27   *v. White House Properties, Inc.* (1980) 112 Cal.App.3d 465, 470; *Gipson v. Davis Realty Co.*, supra,
     215 Cal.App.2d at pp. 206-209.

28

1
2
3

      **1.**     **The Agency Relationship Between A Broker And Salesperson Regarding Third Party Liability Is Derived From The Employer-Employee Relationship, And Not From A True Independent Contractor Relationship**.

4

That the broker is always considered the employer of the salesperson for purposes of

5

third party liability is consistent with California's statutory duties of supervision, which are

6

designed to protect third parties. California law imposes a statutory duty on brokers to

7

supervise and oversee the actions of the salesperson,[4] which is far different from the

8

traditional independent contractor relationship. This distinction is reflected in California's

9

law imposing liability on the broker for all harm caused to third parties by the salesperson's

10

actions. Under the employer-employee relationship, liability ***always*** flows from the

11

employee to the employer when the employee is acting in the course and scope of

12

employment, which is <u>exactly</u> how California law treats third party liability between a

13

salesperson and broker.[5] This statutory duty of supervision, and the attendant liability to the

14

broker under respondeat superior, provides an important safeguard to the public. If a broker

15

could force its salesperson to purchase insurance for the broker's benefit, the statutory duty

16

of supervision would be flipped on its head, as the salesperson would be effectively

17

indemnifying the broker for third party liability. This is not what California courts had in

18

mind when mandating that a broker is always responsible for the harm caused by its

19

salesperson, no matter how the relationship is characterized.

20

Defendant, citing to *Gipson v. Davis* (1963) 215 Cal.App.2d 190, concedes that in the

21

area of third party liability, salespersons are ***agents*** of brokers, but argues that this does not

22
23

---

24

    [4]    Bus. & Prof. Code § 10177(h); 10 Cal. Code Reg. § 2725(f). California regulations define such reasonable supervision as including establishment of "policies, rules, procedures and systems to review, oversee, inspect and manage" transactions requiring a real estate license. 10 Cal. Code Reg. § 2725.

25
26

    [5]    On the other hand, liability does not always flow from the independent contractor to the principal in a true independent contractor relationship, as recognized by California courts in their prohibition of this characterization of the broker-salesperson relationship for third party liability.

27
28

---

Opposition to Defendant's Motion to Dismiss      8      Case No. 08 CV 0817 L AJB

1    make them the broker's **employee**.[6]  However, *Gipson* was decided in 1963, long before this

2    area of the law developed,[7] and much of the discussion therein regarding the distinction of

3    a "servant" is now "archaic."  See Witkin, 3 Summary of Calif. Law, §3 p. 41 (10th ed.).

4    Indeed, modern treatises recognize that "[t]here is seldom  any reason to distinguish between

5    the service of an agent and that of an employee."  Id. at §4 p. 42.  *Gipson* merely holds that

6    third-party liability always flows to the broker, no matter how the broker and salesperson

7    characterize their relationship.   The Court in *Gipson* attempted to reconcile previous case

8    law by clarifying that although third party liability always flows to the broker, the salesperson

9    is not necessarily the employee of the broker for all other purposes besides third party

10    liability.  *Gipson* did not go to "great lengths" to distinguish an agent and employee, as

11    overstated by Defendant.

12        **2.    California Courts And Treatises Already Recognize That For Purposes
            Of Third Party Liability, The Salesperson Is Always The Employee Of
13          The Broker.**

14        California's courts and secondary treatises already recognize that for purposes of third

15    party liability, the salesperson is always the employee of the broker.  See, e.g, *Tolentino v.*

16    *Redhill Remax Realty*, 2003 WL 22873020, *1 ["**For purposes of respondeat superior, a**

17    **real estate salesperson is an employee of the salesperson's broker, who is, as a matter**

18    **of statute...the employer**"]; *Reagan v. Keller Williams Realty, Inc.*, 2007 WL 2447021;

19    *California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575 ["Imposing

20    liability on the **employer** for the  **employee's** tortious conduct creates a strong incentive for

21    the **employer** to take preventive measures against like misconduct by **employees** in the

22    future" (emphasis added)]; Miller & Star, Miller and Starr California Real Estate, §3:19 (3d

23    ed.) ["**It is clear that for purposes of...the obligations of the broker and salesperson to**

24

25        [6]    Def.'s Mem. 7:22-25.

26        [7]    For instance, *Gipson* holds that "a salesman, insofar as his relationship with the
     broker who employs him is concerned, cannot be classed as an independent contractor." *Id.* at 207.
27    After the enactment of Business & Professions Code section 10032, even Defendant must agree that
     this is no longer an accurate statement of the law.

28

---

Opposition to Defendant's Motion to Dismiss          9          Case No. 08 CV 0817 L AJB

the public or to the principal, the salesperson is an employee of the real estate broker"].

### 3.     California Law Recognizes At Least Two Other Situations Where The Salesperson Is Always Considered The Employee Of The Broker.

Indeed, third party liability is not the only area of law where the salesperson is always considered to be the employee of the broker.  Rather, there are *at least* two other instances where the salesperson is always considered to be the broker's employee, no matter how the parties characterize their agreement.  For purposes of California's worker's compensation laws, the salesperson is always considered the employee of the broker.  Bus. & Prof. Code § 10032(b) ["For purposes of workers compensation the characterization of the relationship shall be governed by Section 3200, and following, of the Labor Code."].  A ruling allowing Defendant to escape liability from forcing its salespersons to pay for its third party liability insurance would also support a broker's right to force its salespersons to pay for worker's compensation insurance, in contravention of California's laws prohibiting this practice.[8] Also for purposes of the administration and enforcement of the Real Estate Law, the salesperson is always considered the employee of the broker.[9]

Thus, because: 1) a broker is liable to third parties under the doctrine of respondeat superior for the acts of his salespeople committed during the course and scope of employment; 2) the broker-salesperson relationship cannot, by law, be characterized as that of an independent contractor when the salesperson is acting in the course and scope of employment; 3) any agreement purporting to create an independent contractor relationship for purposes of third party liability is invalid as a matter of law; 4) California's licensing laws and regulations demonstrate that the agency relationship is fundamentally derived from the employer-employee relationship; 5) California courts and treatises already recognize that for

---

[8]     See Labor Code § 3751, subd. (a); see also *Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 226.

[9]     *Grubb & Ellis Co. v. Spengler*, supra, 143 Cal.App.3d at 895 [citing to Bus. & Prof. Code §§ 10132, 10137, 10151, 10160, 10177, subd. (h); *Grand v. Griesinger* (1958) 160 Cal.App.2d 397, 404-406].

1    purposes of third party liability, the salesperson is always considered the employee of the

2    broker; and 7) third party liability is one of *at least* three areas of law where the salesperson

3    is always considered the employee of the broker, the Complaint adequately alleges that for

4    purposes of third party liability, Plaintiff and Class members are always considered the

5    employees of Defendant.

6    **D.    Under Well-Settled California Law, An Employer Cannot Pass Along The Ordinary Costs Of Doing Business To Its Employees**.

7
     Defendant argues that even if Plaintiff and Class members were employees of
8
     Defendant for purposes of third party liability, all of Plaintiff's claims fail because the
9
     statutes and Wage Orders cited in the Complaint do not provide Plaintiff with grounds for
10
     relief.  For the reasons discussed below, this argument is meritless.
11
         Plaintiff's Complaint alleges that "California's labor laws, including, *inter alia*, Labor
12
     Code sections 221, 400-410, and section 8 of the IWC Wage Order 4-2001, prohibit an
13
     employer from making its employees the insurers of the employer's business losses,
14
     including losses derived from tort liability to third parties."  Compl. ¶¶20-23, 25-28.  As
15
     discussed below, California law is well-settled that an employer cannot make its employees
16
     bear the cost of the employer's business expenses, such as the expense of insurance, which
17
     is directly at issue here.
18
         **1.    An Employer Cannot Require Its Employees To Insure Against The Employer's Losses And Expenses, Unless The Employer Complies With California's Employee Bond Law.**
19

20
         "California law is clear that an employer cannot make employees the 'insurers of the
21
     employer's business losses.'" *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th
22
     1109, 1123); see also *Kerr's Catering Service v. Dept. of Ind. Relations* (1962) 57 Cal.2d
23
     319, 327-328; *Quillian v. Lion Oil Co.* (1979) 96 Cal.App.3d 156, 163; Lab. Code §§ 221,
24
     400-410. For an employer to do so, he must comply with the Employee's Bond Law.  See
25
     Lab. Code §§ 400-410.
26   / / /

27   / /

28

Further, Labor Code section 221 provides that, except for deductions expressly authorized by state or federal law,[10] an employer may not "collect or receive from an employee any part of wages theretofore paid." "Case law has interpreted various provisions of the Labor Code, and regulations issued thereunder as prohibiting deductions from an employee's stated wage to cover certain of the employer's business costs, such as cash and merchandise losses not caused by the employee's dishonesty, or his willful or grossly negligent act." *Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 222; see also IWC Wage Order 4-2001 [prohibiting an employer from making deductions for "breakage," i.e., losses caused by an employee in the discharge of his or her normal job duties]. "Because the laws authorizing the regulation of wages, hours, and working conditions are remedial in nature, courts construe these provisions liberally, with an eye to promoting the worker protections they were intended to provide." (*Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 227.)

Here, Defendant attempts to make Plaintiff and Class members the insurers of its business losses by forcing Plaintiff and Class members to purchase professional liability insurance and automobile insurance for Defendant's benefit. Because, as held by the Courts in *Kerr's Catering, Quillian, and Neiman Marcus*, an employer cannot make its employees the insurers of its business losses, Defendant's practice and policy of forcing Plaintiff and Class members to purchase insurance for Defendant's benefit violates Labor Code section 221 and California's Employee Bond Law.

**2.    An Employer Must Indemnify Its Employees For All Expenses Paid By The Employee On Behalf Of The Employer.**

Labor Code section 2802(a) requires an employer to indemnify its employees for all expenses paid by the employee on behalf of the employer. The statute reads:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying

---

[10]    See Lab. Code § 224.

1    the directions, believed them to be unlawful.

2    Here, Plaintiff's Complaint alleges that Defendant failed to indemnify Plaintiff and

3    Class members by forcing them to bear the burden of paying for one of Defendant's ordinary

4    business expenses: insurance.  Although Plaintiff did not expressly set forth Labor Code

5    section 2802 in the Complaint, the language of the Complaint adequately alleges a violation

6    of this section of California's wage and hour laws.  Alternatively and if necessary, Plaintiff

7    is prepared to file an amended Complaint that expressly sets forth Defendant's violation of

8    this section of California's Labor Code.

9    Thus, because: 1) California law is clear that an employer cannot make employees the

10   'insurers of the employer's business losses; 2) except for deductions expressly authorized by

11   state or federal law, an employer may not "collect or receive from an employee any part of

12   wages theretofore paid; and 3) Defendant's policy and practice of forcing Plaintiff and Class

13   members to purchase insurance for the Defendant's benefit violates California employment

14   laws, including Labor Code sections 221, 400-410, 2802, and section 8 of IWC Wage Order

15   4-2001, the Complaint adequately alleges that Defendant forced Plaintiff and Class members,

16   its employees, to pay for Defendant's insurance expense, and the Court should deny

17   Defendant's Motion to Dismiss.

18   **E.    The Complaint Adequately Alleges That Defendant's Actions Are "Unlawful"
         And "Unfair" Under California's Unfair Competition Law**.

19
     Plaintiff's third claim alleges Defendant violated California's Unfair Competition Law

20   ("UCL")[11] by engaging in practices both "unlawful" and "unfair."  Compl. ¶¶31, 33.  For the

21   reasons discussed below, Defendant's argument that the Complaint fails to adequately allege

22   violations of the UCL is meritless.

23   / / /

24   / / /

25   / / /

26

27   _____

28   [11]    As codified in Business & Professions Code sections 17200 *et seq.*

1.    **The Complaint Adequately Alleges That Defendant's Actions Are "Unlawful" Under The UCL**.

As recognized by Defendant, a claim predicated on the "unlawful" prong of the UCL makes a violation of the underlying law a per se violation of the UCL. *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 950.  In this regard, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exhc. v. Sup. Ct.* (1992) 2 Cal.4th 377, 383.

Here, as stated in the Complaint, Plaintiff's UCL claims are predicated on Defendant's violations of Labor Code sections 221, 2802,[12] 400-410, and section 8 of IWC Wage Order 4-2001.  Compl. ¶31.  Because Plaintiff's Complaint adequately alleges violations of California's Labor Codes as the predicate for the "unlawful" prong of the UCL, the Court should deny Defendant's Motion to Dismiss.

2.    **The Complaint Adequately Alleges That Defendants Actions Are "Unfair" Under The UCL**.

As stated by California's Supreme Court:

> The [UCL] does more than just borrow [unlawful acts].  The statutory language referring to 'any unlawful, unfair or fraudulent' practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law....In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa.

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.  The "unfair" standard is intentionally broad, allowing courts maximum discretion to prohibit new schemes to defraud. *Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740.  To determine if an act or practice is "unfair," courts "must weigh the utility of the defendant's conduct against the gravity of the harm of the alleged victim." *Tyco Int'l Co. v. Sup. Ct.* (1996) 45 Cal.App.4th 1093, 1104.

/ / /

---

[12]    Although the Complaint does not explicitly allege a violation of Lab. Code § 2802, the language of the Complaint effectively alleges a violation of this statute without stating it explicitly.  Alternatively and if necessary, Plaintiff can file an amended Complaint that explicitly alleges a violation of this section of the Labor Code.

Here, as stated in the Complaint, Plaintiff's UCL claims are predicated on Defendant's "unfair" practice of forcing its salesperson to purchase insurance for the Defendant's benefit. Defendant's argument that "it is not unusual for a principal to request that the independent contractor purchase insurance to protect not only the independent contractor, but the principal as well" is unsupported by admissible evidence, and is not properly considered at this stage of litigation.  Rather, this argument should be raised and supported by admissible evidence in a Rule 56 motion.  Furthermore, there is no "benefit" to the Plaintiff and Class members of forcing them to purchase professional liability insurance ***directly from the Defendant***, when there is no requirement under California law to do so, and a salesperson has no liability separate from the broker.  Furthermore, Plaintiff and Class members, if necessary, would plead in an amended Complaint that they were not allowed to shop around for professional liability insurance and had to purchase it directly from Defendant, were not allowed to participate in Defendant's decision regarding which insurance policy to purchase, and were not provided with any accounting that showed how their premiums were calculated, or whether Defendant was actually profiting from charging Plaintiff and Class members for the professional liability insurance.  Because Plaintiff's Complaint adequately alleges that Defendant's actions in forcing Plaintiff and Class members to pay for Defendant's insurance as the predicate for the "unfair" prong of the UCL, the Court should deny Defendant's Motion to Dismiss.

### 3. The Complaint Adequately Alleges That Plaintiff Suffered Injury In Fact From Defendant's Violation Of The UCL.

Defendant's argument that Plaintiff did not suffer "injury in fact" as required by Prop. 64 is predicated on Defendant's argument that it was not the "employer" of Plaintiff, and could therefore lawfully force Plaintiff and Class members to pay for Defendant's insurance. The Complaint adequately alleges that Plaintiff suffered injury by paying Defendant directly for professional liability insurance (Compl. ¶¶7, 22) and by being required to purchase additional automobile insurance for Defendant's benefit.  (Compl. ¶¶8, 27.)  Because the Complaint adequately alleges that Plaintiff and Class members suffered "injury in fact," the

1    Court should deny Defendant's Motion to Dismiss.

2    **F.    Making The Broker Responsible For Paying For His Own Insurance Premiums**
      **Would Encourage Greater Oversight, And Reduce The Likelihood Of Harm To**
3    **Third Parties.**

4            Finding a broker responsible for paying for his or her own insurance premiums is

5    beneficial from a public policy perspective because it would encourage greater oversight of

6    salespersons, and would thus reduce the likelihood of harm to third parties.  Under California

7    law, a salesperson has no separate or individual liability from his or her employing broker,

8    for ordinary acts of negligence committed in the course and scope of his or her employment

9    with the broker.   Under the doctrine of respondeat superior and case law going back to

10   *Gipson v. Davis* (1963) 215 Cal.App.2d 190, a broker is ***always*** liable for the negligent acts

11   of its salesperson committed within the course and scope of employment, and any agreement

12   to the contrary is invalid as a matter of law.   *California Real Estate Loans, Inc. v. Wallace,*

13   supra, 18 Cal.App.4th at p. 1581.

14           Making brokers responsible for paying for their own insurance premiums would

15   encourage greater oversight of their salespersons, which would reduce the likelihood of

16   negligent harm to third parties, and encourage greater compliance with California's statutory

17   duty of supervision.  Brokers would have a greater incentive to comply with their statutory

18   duty to exercise reasonable supervision over the activities of his or her salespersons,[13] and

19   to establish "policies, rules, procedures and systems to review, oversee, inspect and manage"

20   transactions requiring a real estate license[14] because the broker would want to minimize the

21   cost of his or her insurance premiums.  This statutory duty of supervision, and the attendant

22   liability to the broker under respondeat superior, provides an important safeguard to the

23   public.  If a broker could force its salesperson to purchase insurance for the broker's benefit,

24   the statutory duty of supervision would be flipped on its head, as the salesperson would be

25

26
             [13]      Bus. & Prof. Code § 10177(h); 10 Cal. Code Reg. § 2725(f).
27
             [14]      10 Cal. Code Reg. § 2725.
28

effectively indemnifying the broker for third party liability. This is not what California courts had in mind when mandating that a broker is always responsible for the harm caused by its salesperson, no matter how the relationship is characterized. As such, from a public policy perspective, it is beneficial to prohibit the broker from forcing its salespersons to pay for the broker's insurance.

**G.    The Complaint Pleads That Purchasing Insurance Is Mandatory, And Defendant Submits No Evidence To The Contrary**.

Defendant argues the first cause of action should be dismissed because there is nothing in the Independent Contractor Agreement which requires Plaintiff to purchase professional liability insurance, and that the Program was "optional."[15] This argument is meritless for the reasons discussed below.

First, Plaintiff asserts that this terminology adequately alleges that Plaintiff and Class members were required by Defendant to purchase the professional liability insurance set forth in Schedule C to the Agreement. Second, the Complaint alleges that Plaintiff and Class members are employees of Defendant for purposes of third party liability, and that Defendant wrongfully received monies from Plaintiff and Class members to offset Defendant's ordinary business expense of paying for insurance. As such, even assuming *arguendo* that participation was "voluntary," the Complaint still adequately alleges its claims because, as discussed *supra*, an employer cannot receive "voluntary" contributions from its employees to offset its ordinary business expenses.

If, however, the Court has a different interpretation of this provision, Plaintiff requests leave to file an amended Complaint that explicitly clarifies that, as a condition of their employment with Defendant, Plaintiff and Class members were required to purchase the

---

[15]    The allegation in the Complaint reads: "Under the Program, Plaintiff and Class members were required to purchase, and did in fact purchase out of their own personal funds, insurance and/or indemnification related to legal claims brought by third parties against COLDWELL BANKER or Plaintiff and Class members or both, "for money damages or rescission, including, but not limited to, the service of a suit or institution of arbitration proceedings against COLDWELL BANKER or [Plaintiff and Class members], arising out of [Plaintiff and Class members]'s alleged acts or omissions under the Independent Contractor Agreement." Compl. ¶7.

1   professional liability insurance set forth in Schedule C to the Agreement.

2   **H.     Alternatively, The Court Should Grant Plaintiff Leave To File An Amended
           Complaint**.

3

4           As argued above, Plaintiff strongly believes that the Complaint adequately alleges

5   claims against Defendant for its unlawful practice of forcing Plaintiff and Class members to

6   purchase insurance for Defendant's benefit.  However, if for whatever reason the Court

7   disagrees and grants Defendant's Motion, Plaintiff respectfully requests leave to file an

8   amended Complaint to cure any defects.

9           As a practical matter, leave to amend is almost always granted by the court.  Rule

10  15(a) of the Federal Rules of Civil Procedure expressly states leave to amend "shall be freely

11  given when justice so requires." Fed.R.Civ.P. 15(a); *Allen v. City of Beverly Hills,* 911 F.2d

12  367, 373 (9th Cir. 1990).  In the Ninth Circuit, "[t]his policy is 'to be applied with extreme

13  liberality.'" *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003)

14  (reversing district court's denial of leave to amend); *Foman v. Davis,* 371 U.S. 178, 182

15  (1962).

                                              **V.**
16                                      **CONCLUSION**

17          For the foregoing reasons, Plaintiff respectfully requests that the Court deny

18  Defendant's Motion To Dismiss.  Alternatively, Plaintiff requests leave to file an amended

19  Complaint to cure any deficiencies in the pleadings or, if necessary, to add additional

20  Plaintiffs and Class representatives.

21

22  Dated: August 11, 2008                          **KEEGAN & BAKER, LLP**

23

24                                                  s/ Brent Jex
                                                    Patrick N. Keegan, Esq.
25                                                  Jason E. Baker, Esq.
                                                    Brent Jex, Esq.
26
                                                    Attorneys  for  Representative  Plaintiff
27                                                  JASON CLAVER

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) BY DEFENDANT COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY** was filed electronically on August 11, 2008, and will, therefore, be served electronically upon:

**Calvin Davis, Esq.**
**Yesenia M. Gallegos, Esq.**
**GORDON & REES, LLP**
**633 West Fifth Street, Suite 4900**
**Los Angeles, CA 90071**
**Tel: (213) 576-5000**
**Fax: (213) 680-4470**
**Attorneys for Defendant**

Executed August 11, 2008, at San Diego, California.

s/ Brent Jex
Brent Jex, Esq.
Attorney for Representative Plaintiff
JASON CLAVER
e-mail: bjex@keeganbaker.com