CALVIN E. DAVIS (SBN: 101640)
YESENIA M. GALLEGOS (SBN: 231852)
GORDON & REES LLP
633 West Fifth Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470
Email: cdavis@gordonrees.com
ygallegos@gordonrees.com

Attorneys for Defendant
COLDWELL BANKER RESIDENTIAL
BROKERAGE COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CLAVER, individually and on behalf of all other persons similarly situated and on behalf of the general public,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY, a California corporation,<br><br>　　　　　　Defendant. | CASE NO. 08 CV 0817 L AJB<br><br>**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:　　　August 25, 2008<br>Time:　　　10:30 a.m.<br>Location:　Courtroom 14<br>Judge:　　　Hon. M. James Lorenz<br><br>Complaint filed:　5/6/08<br>Trial date:　　　　Unassigned |

## I. SUMMARY OF REPLY TO PLAINTIFF'S OPPOSITION

Plaintiff's Opposition Memorandum is long on arguments on how the law is "clear" that a real estate salesperson is "always" considered an employee of his broker for purposes of third party tort liability, but conspicuously short on any legal authority for this proposition. This is because no such authority exists. The best Plaintiff can do is proffer secondary sources and unpublished cases (none of which actually support his position). When having to address case authority that contradict his assertions, Plaintiff weakly responds that this authority is "archaic" even though it is cited in the very secondary sources he is relying upon.

What is "clear" is the following: (1) real estate brokers and salespersons are statutorily authorized to contract between themselves to establish independent contractor relationships and

1

(2) while salespersons are agents of brokers for purposes of third party tort liability, they are not employees. Plaintiff wants to create out of whole cloth an employer-employee relationship in the latter circumstance so he can impose an obligation on behalf of all brokers in the state to buy insurance for their salespersons. However, even assuming arguendo (and in the face of no authority) that such a relationship exists, the Labor Code sections cited by Plaintiff as the basis for his causes of action would create no duty on the part of a broker to purchase such insurance. Accordingly, from every perspective, there is no basis for Plaintiff's Complaint and no hope of amending it to state a claim. This Motion should be granted without leave to amend.

## II. PLAINTIFF CANNOT REFUTE WELL SETTLED LAW HOLDING THAT AT MOST, FOR PURPOSES OF THIRD PARTY LIABILITY, A REAL ESTATE SALESPERSON IS AN *AGENT* OF A BROKER, BUT NOT AN *EMPLOYEE*.

Plaintiff's Complaint attempts to establish that salespersons are employees of brokers for purposes of third party tort liability, in an attempt to create an obligation on the part of all brokers in the state to purchase insurance for their salespersons. In his Opposition, Plaintiff repeatedly argues that insofar as liability to third parties is concerned, a salesperson is "<u>always</u> considered the employee of the broker." Opposition ("Opp."), 6:15-18 (emphasis in original.) However, despite his attempts to obfuscate the issues, there is no legal support for this argument.

In its Motion to Dismiss, as a threshold matter, CBRBC pointed to the Independent Contractor Agreement signed by Plaintiff and attached to the Complaint in which Plaintiff acknowledged he was not an employee of CBRBC. (Complaint, Ex. A p.1 § 1.) Contrary to Plaintiff's arguments, this was not done to establish anything other than, as a starting point, that the parties agreed that their relationship was not that of employer-employee. Such an agreement is specifically authorized by statute. Cal. Bus. & Prof. § 10032(b).

In *Gipson v. Davis Realty Co.* (1963) 215 Cal. App. 2d 190, 206-09, the court examined the relationship between a real estate salesperson and broker for purposes of third party liability. There, a third party had filed a personal injury action against the broker for accidental injuries caused by a salesperson. The court held that the broker was liable for the injuries because the Real Estate Act made a salesman an agent of the broker. *Id.* However, the *Gipson* court carefully refused to hold that an agency relationship is the same as an employment relationship, finding that

Gordon & Rees LLP
633 West Fifth Street, Suite 4900
Los Angeles, CA 90071

"the terms are not synonymous." *Id.* at 205. Plaintiff argues that *Gipson* is "archaic" (Opp., 9:3) even though it continues to be cited for its holdings by the California Supreme Court (*Associated Creditors' Agency v. Davis* (1975) 13 Cal 3d 374, 386), was cited by a California Court of Appeal as recently as 2006 (*Baptist v. Robinson* (2006) 143 Cal App 4th 151, 162), and was relied upon in one of the secondary sources cited by plaintiff (relationship of employer-employee and principal-agent are not identical (3 Witkin, Summary of Cal. Law § 4)). His reliance on *Grubb & Ellis Co. v. Spengler* (1983) 143 Cal. App. 3d 890, 895 and *California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal. App. 4th 1575, 1581 is misplaced. Those cases actually support CBRBC's argument that insofar as third party liability is concerned, salespersons are *agents* of the broker. *Cal. Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal. App. 4th 1575, 1581 ("It is settled that for purposes of liability to third parties for torts, a real estate salesperson is the **agent** of the broker who employs him or her"); *Grubb & Ellis Co. v. Spengler* (1983) 143 Cal. App. 3d 890, 895 ("For purposes of establishing tort liability, the California courts have held that a broker is liable under the doctrine of respondeat superior for the tortious acts of his salespeople during the course an scope of business because a salesperson is the **agent** of the broker.").

Plaintiff's attempts to assemble legal support from unpublished opinions and secondary sources also fail in the face of binding legal precedent cited in CBRBC's motion to dismiss referencing almost 50 years of consistent and settled law. For example, Plaintiff relies on the unpublished opinions in *Tolentino v. Redhill Remax Realty*, 2003 WL 22873020 and *Reagan v. Keller Williams Realty, Inc.*, 2007 WL 2447021.[1] But these cases do not support Plaintiff either. Although the *Tolentino* court makes a conclusory statement about an employer-employee for broker/salespersons in respondeat superior situations, it is (1) in dicta and (2) the Court mistakenly cites to the *Gipson* case for this proposition. 2003 WL at *1. The *Reagan* court did not hold that salespersons are *employees* for purposes of third party liability. *Reagan*, 2007 WL at *9. Rather, in holding that defendant real estate broker was responsible for Plaintiff's injuries sustained as a result of a vehicle accident caused by the broker's real estate salesperson, the court reasoned that for purposes of third party liability for torts, "a real estate

---

[1] Such decisions are uncitable for any purpose in California state courts. Cal. R. Ct. Rule 8.1115

Gordon & Rees LLP
633 West Fifth Street, Suite 4900
Los Angeles, CA 90071

salesperson is the **agent** of the broker who employs him or her" *Id.* (citations omitted.) Finally, Plaintiff's reliance on a secondary source for the proposition that a salesperson is an *employee* of the real estate broker for purposes of obligations to the public, is equally unpersuasive because the secondary source cites to *Grubb & Ellis Co. v. Spengler* (1983) 143 Cal. App. 3d 890, 895, which actually held that real estate salespersons are *agents* of the broker for purposes of third party liability, not employees. *See* Miller and Starr California Real Estate, 3d ed., §§3:18 and 3:19; *compare with Grubb & Ellis Co., supra,* 143 Cal. App. 3d at 895.

Accordingly, Plaintiff has failed to cite to any legal authority for the proposition that a real estate salespersons is the *employee* of the broker for purposes of third party liability. This Motion should be granted without leave to amend.

III. **EVEN IF THIS COURT FINDS THAT, FOR PURPOSES OF THIRD PARTY LIABILITY, A REAL ESTATE SALESPERSON IS AN *EMPLOYEE* OF THE BROKER, IT MUST STILL DISMISS THE COMPLAINT IN ITS ENTIRETY BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

A. **The Court Must Dismiss Plaintiff's First Claim For Failure To Indemnify For Professional Liability Insurance Because Nothing In The Agreement Attached To The Complaint Required Plaintiff To Purchase The Insurance.**

Plaintiff's allegation that he was required to purchase professional liability insurance is unsupported by fact and contradicted by the Independent Contractor Agreement attached to Plaintiff's Complaint. Accordingly, Plaintiff's first cause of action must be dismissed.

Plaintiff's Opposition does not dispute that he failed to plead any facts in support of his claim. Instead, Plaintiff argues that the terminology of Schedule C (Legal Assistance Program) shows that he was *required* to participate in the program. (Opp., 17:6-20.) Plaintiff is wrong. Schedule C does not contain any language reflecting that participation in CBRBC's Legal Assistance Program, which, *in part*, offered Plaintiff professional liability insurance, was a requirement.[2] (Complaint, Ex. A & B.) Plaintiff also argues that even if the program was voluntary, his claims should should survive because Labor Code sections 221, 400-410 and

---

[2] CBRBC did require that salespersons maintain automobile insurance. However, **in California, the Compulsory Financial Responsibility Law already requires Plaintiff and any other driver and owner of a motor vehicle to maintain automobile insurance.** Cal. Veh. Code §§16000-16028. CBRBC simply required specified insurance limits for the protection of Plaintiff, CBRBC or both.

4

CASE NO. 08 CV 0817 L AJB

section 8 of Wage Order 4-2001 prohibit employers from receiving *voluntary* contributions from employees to offset *business expenses.* (Opp. 17:11-20.) This argument is equally flawed because Plaintiff failed to plead facts that CBRBC's Legal Assistance Program, a program that also offered salespersons professional improvement workshops, various discounts, networking services and administrative and technological support, was a *business expense.* Further, the wage and hour laws cited by Plaintiff's Complaint are inapplicable because, as set forth below, Plaintiff was not a *covered employee* and those sections address wage deductions and cash bonds, which have nothing to do with this case. *See* Cal. Lab. Code §§221, 400-410, Wage Order 4-2001, §8.

**B.     The Court Must Dismiss Plaintiff's First Cause Of Action For Failure To Indemnify For Professional Liability Insurance And Second Cause Of Action For Failure To Indemnify For Automobile Insurance Because Labor Code Sections 221, 400-410 And Section 8 Of Wage Order 4-2001 Do Not Provide Plaintiff With Any Cognizable Ground For Relief.**

Plaintiff argues that his claims for failure to indemnify for professional liability and automobile insurance are based on CBRBC's violation of Labor Code sections 221, 400-410 and section 8 of Wage Order 4-2001 by "passing along the costs of doing business to Plaintiff and Class members." (Opp., 11:6-12:20.) However, those sections will not provide Plaintiff with relief because California wage and hour law is inapplicable to Plaintiff and even if it was applicable to Plaintiff, those sections have nothing to do with the facts of this case.

**1.     California's Wage And Hour Laws Only Apply To Covered Employees, And Plaintiff Has Not Established This Prerequisite.**

As set forth in CBRBC's motion to dismiss, Plaintiff is not entitled to relief under Labor Code sections 221, 400-410 and section 8 of Wage Order 4-2001 because Plaintiff's allegations fail to establish that he was a covered employee so as to avail himself to California wage and hour law. *Balistreri v. Pacifica Police Dept.* (9th Cir. 1999) 901 F.2d 696, 699 (9th Cir. 1990) (dismissal is appropriate where there are insufficient facts to support a cognizable legal theory).

California wage and hour law is governed principally by the Labor Code and a series of 17 industrial and occupational regulations known as Wage Orders. The major thrust of California's wage and hour laws is to establish requirements pertaining to the wages, hours, and working conditions of covered employees. The requirements and protections of state and federal

wage and hour laws apply only when an *employer-employee relationship* exists between the employer and the worker. *See* 29 C.F.R. §§778.100-778; *see also* D.L.S.E. Operations and Procedures Manual §10.65. Individuals who are independent contractors are not "employees" for wage and hour purposes and are, consequently, not subject to California's wage and hour laws. *See* D.L.S.E. Operations and Procedures Manual §10.65.

To determine whether an individual is an employee for *wage and hour purposes*, California courts analyze the economic realities of the relationship. *See Zaremba v. Miller*, (1980) 113 Cal App. 3d Supp. 1, 5; *Empire Star Mines Co. v. California Empl. Commission* (1946) 28 Cal. 2d 33, 43. "If the employer has the authority to exercise complete control … an employer-employee relationship exists." *Zaremba, supra,* 113 Cal App. 3d Supp. at 5.

Here, Plaintiff has failed to plead any facts supporting the theory that he was an employee for purposes of California's wage and hour law. Plaintiff does not allege that he was improperly classified as an independent contractor and does not attempt to establish a single fact pertaining to the level of CBRBC's control over his work in an effort to avail himself to sections 221, 400-410 and section 8 of Wage Order 4-2001. Plaintiff failed to meet the threshold requirement of establishing he was a *covered employee* subject to California wage and hour law. Accordingly, the Court must dismiss Plaintiff's first and second causes of action.

2.  **Plaintiff Has Cited No Legal Authority That Permits Him To Borrow A Status As An *Employee* For The Limited Purposes Of Third Party Liability And Lend It To The California Labor Code To Usurp The Protections Offered To Covered Employees Therein.**

Plaintiff would have this Court believe that he is an employee under California's wage and hour laws because, as Plaintiff argues, Plaintiff was an employee of CBRBC for purposes of third party liability. (Opp., 6:19-7:17.) Plaintiff is attempting to borrow his status as an "employee" for the narrow purposes of third party liability, and lend it to the California Labor Code to usurp the protections offered therein. This tactic is insufficient to invoke the application of those wage and hour laws. *See* D.L.S.E. Operations and Procedures Manual §10.65 (independent contractors are not "employees" for wage and hour purposes).

Plaintiff, erroneously, then tries to rely on California Labor Code section 3357, arguing that it sets forth a presumption that workers are employees for purposes of wage and hour laws. Plaintiff is wrong. Section 3357 clearly states: "Any person rendering services for another, *other than as an independent contractor*, or unless expressly excluded herein, is presumed to be an employee." (emphasis added.) Section 3357 expressly carves out an exception for independent contractors and here, Plaintiff was lawfully an independent contractor. Cal. Bus. & Prof. §10032(b). Accordingly, Plaintiff was not an employee for purposes of applying Labor Code sections 221, 400-410 and section 8 of Wage Order 4-2001.

Thus, Plaintiff's first and second causes of action must be dismissed.

### 3. Even If This Court Found That Plaintiff Was An Employee For Purposes of California Wage And Hour Law, Plaintiff's First and Second Causes Of Action Still Fail Because Labor Code Sections 221, 400-410 and Section 8 of Wage Order 4-2001 Are Inapplicable To The Facts Of this Case.

Plaintiff's first and second causes of action for failure to indemnify for professional and automobile liability insurance must be dismissed because Labor Code sections 221, 400-410 and section 8 of Wage Order 4-2001 apply to wage deductions and cash bonds, not insurance indemnification of real estate salespersons.

Labor Code section 221 makes it unlawful for an employer to collect or receive from an employee any part of the employee's wages. Cal. Lab. §221. Similarly, section 8 of Wage Order 4-2001 prohibits an employer from deducting from an employee's wages for cash shortages and breakage unless the employer can show that the loss was caused by the employees dishonesty, willful act or culpable negligence. Wage Order 4-2001, § 8. Additionally, Labor Code sections 400-410 regulates cash bonds posted by employees when the employer entrusts the employee with its property. *See* Cal. Lab. §§400 – 410.

Clearly, nothing in those sections prohibits a real estate broker, such as CBRBC, from offering professional liability insurance to its real estate salespeople or requiring that the salespeople maintain automobile insurance, each for the protection of the broker, the salesperson or both. Accordingly, Plaintiff's first and second causes of action, predicated on alleged violations of those statutes, must be dismissed.

4. **The *Kerr's Catering Service, Quillian* and *Hudgins* cases, cited in Plaintiff's Opposition support CBRBC's Motion to Dismiss by reinforcing that Labor Code sections 221, 400-410 and section 8 of Wage Order 4-2001 are inapplicable to the facts of this case.**

Plaintiff argues that his claims pursuant to Labor Code sections 221, 400-410 and section 8 of IWC Wage Order 4-2001 are made viable by the holdings in *Kerr's Catering Service v. Dept. of Ind. Relations* (1962) 57 Cal. 2d 319, 327-328; *Quillian v. Lion Oil Co.* (1979) 96 Cal. App. 3d 156, 163 and *Hudgins v. Neiman Marcus Group*, Inc. (1995) 34 Cal. App. 4th 1109. Plaintiff's reliance on these cases is misplaced because although they address sections 221 and 400-410, they offer no support to Plaintiff's complaint that CBRBC's insurance programs and requirements were unlawful.

*Kerr's Catering Service, Quillian* and *Hudgins* are inapplicable to the case at hand because each dealt with an employer's wage deductions as an offset for cash shortages or loss of merchandise. Those wage deductions were also for the sole benefit of the employer. In stark contrast, Plaintiff has not pled that CBRBC deducted any amount of money from his salary or commissions. Plaintiff has also not pled that CBRBC sought to make him the insurer for CBRBC's cash shortages or loss of merchandise. In fact, Plaintiff's sole allegation is that CBRBC forced him to purchase insurance for his benefit, CBRBC's benefit or both. (Complaint, ¶¶7 and 8.) Further, unlike *Kerr's Catering Service, Quillian* and *Hudgins,* here, Plaintiff did receive a benefit. Plaintiff received the benefits of both the professional liability insurance that he chose to purchase and automobile insurance that he was required to purchase.

Thus, the application of Labor Code sections 221 and 400-410 in *Kerr's Catering Service, Quillan* and *Hudgins* only support that those sections are inapplicable to the facts of this case. Accordingly, the Court must dismiss Plaintiff's first and second causes of action.

C. **THE COURT MUST DISMISS PLAINTIFF'S THIRD CLAIM FOR UNFAIR BUSINESS PRACTICES BECAUSE PLAINTIFF FAILED TO SHOW ANY "UNLAWFUL" OR "UNFAIR" PRACTICE BY CBRBC.**

Plaintiff's third claim alleges that CBRBC violated California Unfair Competition Law ("UCL") by engaging in "unlawful" and "unfair" business practices. (Complaint, 8:19-9:7.)

8

However, Plaintiff's UCL claim warrants dismissal because it fails to adequately plead that that CBRBC's offer of professional liability insurance and its requirement that salesperson purchase automobile insurance are, as a matter of law, unlawful or unfair.

Plaintiff's UCL claim is predicated on CBRBC alleged violations of Labor Code sections 221, 400-410 and section 8 of Wage Order 4-2001. As set forth above, Plaintiff has not properly plead that CBRBC's conduct was "unlawful" under those sections, therefore, his third claim under UCL fails. *Van Ness v. Blue Cross* (2001) 87 Cal. App. 4th 364, 376-377 (when a complaint fails to state a violation of underlying law, the UCL claim on which it is based also fails.)

Plaintiff's UCL claim is also predicated on CBRBC's alleged "unfair" practices. In his Opposition, Plaintiff argues that CBRBC's practice of forcing salespersons to purchase insurance for the benefit of CBRBC was "unfair" based on the public policy rationale that Plaintiff did not have an opportunity to shop around for liability insurance and instead was forced to purchase it from CBRBC. (Opp., 15:1-19.) As explained above, a cursory review of Plaintiff's Independent Contractor Agreement and Schedule C, each attached to the Complaint, reveal that CBRBC did not force Plaintiff to participate in its Legal Assistance Program, which offered various types of professional support in addition to professional liability insurance. Rather, CBRBC merely offered Plaintiff, and other salespersons, the opportunity to participate. (See Complaint, Exhibits A and B.) Further, CBRBC's offer of professional liability insurance and the required automobile insurance was not unfair because, contrary to Plaintiff's argument, Plaintiff received the benefits of the insurance policies. Had Plaintiff been involved in an automobile accident or a professional legal dispute, the insurance would have protected him. It is also notable that CBRBC's insurance requirements were not unfair because public policy favors insuring against a variety of risks. Thus, CBRBC did not engage in any unfair practices so as to violate UCL.

Plaintiff's UCL claim also fails because he failed to allege any injury in fact. *See Akkerman v. Mecta Corp., Inc.* (2007) 152 Cal. App. 4th 1094, 1098 (The requirement that a plaintiff have suffered "injury-in-fact" means that the plaintiff must allege that he has suffered an "out of pocket" loss); *Daro v. Superior Court* (2007) 151 Cal. App. 4th 1079, 1098 (To have standing under a UCL claim, plaintiff must plead and prove that he has suffered injury in fact

*and* that he has lost money or property). Plaintiff only claims that for one year, May 23, 2006 through June 1, 2007, he purchased professional and automobile liability insurance to protect himself and CBRBC from third party claims. (Complaint, ¶¶6-8.) However, Plaintiff has failed to establish that he was not otherwise required to purchase such insurance, or that he received no benefit from purchasing this insurance. Notably, ***California law already requires Plaintiff and any other driver and owner of a motor vehicle to maintain automobile insurance.*** Cal. Veh. Code §§16000-16028 (Compulsory Financial Responsibility Law).

Accordingly, Plaintiff's UCL claim must be dismissed in its entirely.

### IV. THE COURT SHOULD NOT GRANT PLAINTIFF'S REQUEST FOR LEAVE TO AMEND BECAUSE LABOR CODE SECTION 2802 IS EQUALLY INAPPLICABLE TO THE FACTS OF THIS CASE AND AN AMENDED PLEADING UNDER THAT SECTION OR ANY OTHER WAGE AND HOUR LAW WILL ONLY INVITE ANOTHER MOTION TO DISMISS.

In a last-minute attempt to save his complaint from being dismissed, and conceding that his Complaint does not cite to Labor Code section 2802, Plaintiff offers to amend the Complaint to add this section. However, even if this Court granted leave to amend, section 2802 would not cure the defects in the Complaint. Labor Code section 2802(a) states:

> An employer shall indemnify his or her employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience or the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believe them to be unlawful.

Nothing in the language of section 2802 prohibits a real estate broker from offering professional liability insurance to its salespersons or requiring salespersons to purchase automobile insurance, each for the protection of the salesperson, the broker or both. Thus, the court should deny Plaintiff's request for leave to amend the Complaint.

### V. CONCLUSION

Based on the forgoing reasons, CBRBC requests that the Court grant its motion to dismiss as to Plaintiff's first, second and third causes of action, without leave to amend.

Dated: August 18, 2008                    GORDON & REES LLP

By: s/Calvin E. Davis
CALVIN E. DAVIS
Attorneys for Defendant Coldwell Banker
Residential Brokerage Company

Gordon & Rees LLP
633 West Fifth Street, Suite 4900
Los Angeles, CA 90071

RLGY/1051358/5878354v.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** was filed electronically on August 18, 2008, and will, therefore be served electronically upon:

> Brent Jex, Esq.
> KEEGAN & BAKER, LLP
> 4370 La Jolla Village Drive, Suite 640
> San Diego, CA 92122
> E-mail: bjex@kmb-law.com
> Tel: (858) 552-6750
> Fax: (858) 552-6749
> Attorney for Plaintiff

Executed August 18, 2008, at Los Angeles, California.

s/Sandy Halvorsen
Sandy Halvorsen

Gordon & Rees LLP
633 West Fifth Street, Suite 4900
Los Angeles, CA 90071