UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CLAVER, individually and on behalf of all others similarly situated and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY, a California corporation,<br><br>Defendant. | Civil No. 08cv817-L(AJB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS CLAIM BASED ON INSURANCE CONTRACT THEORY** |

Pending before the court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative strike pursuant to Rule 12(f) portions of the first amended complaint, which are based on alleged violations of California insurance laws. For the reasons which follow, Defendant's motion is **GRANTED**.

Plaintiff is a real estate salesperson and Defendant is a real estate broker. They entered into a contract whereby Plaintiff was to list and sell residential real estate exclusively on behalf of Defendant. Plaintiff filed a complaint alleging that Defendant violated various provisions of California labor laws and California Business and Professions Code Sections 17200 *et seq.* ("Unfair Competition Law" or "UCL"). Defendant's motion attacks one of Plaintiff's theories of liability under the UCL – that Defendant engaged in an unlawful business act or practice by

"soliciting, negotiating, and transacting insurance without a valid license in violation of California Insurance Code . . .." (Am. Compl. ¶ 33.) "An unlawful business practice under section 17200 is an act or practice, committed pursuant to a business activity, that is at the same time *forbidden by law*." *Progressive W. Ins. Co. v. Yolo County Super. Ct. (Preciado)*, 135 Cal. App. 4th 263, 287 (2006) (emphasis in original). Plaintiff alleges that Defendant's act or practice was "unlawful" because it violated various provisions of the California Insurance Code.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. The "complaint must, at a minimum, plead 'enough facts to state a claim for relief that is plausible on its face.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570; 127 S. Ct. 1955, 1974 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998.)

The parties entered into the Independent Contractor Agreement for Coldwell Banker Residential Brokerage ("Agreement"). (Am. Compl. Ex. A-C.) The Agreement included a Legal Assistance Program ("Program"). (*Id*. Ex. A at ¶ 5(E) & Ex. B, App. I.) The Program "describes the parties' respective rights and duties regarding various legal demands and

proceedings involving" either party. (*Id*. Ex. B, App. I.) It provided generally that if a demand were made against either party for damages or rescission, including service of a lawsuit or arbitration demand, arising out of Plaintiff's alleged acts or omissions under the Agreement, the parties to the Agreement would be represented by counsel at no cost to Plaintiff, and Plaintiff would be liable for a maximum of $2,500 towards any settlement or judgment. (*Id*.) Plaintiff was exempt from paying the $2,500 contribution in those cases where the office file contained certain documents which served to limit exposure to liability, such as a seller's disclosure form signed by the buyer prior to closing, a home warranty policy purchased prior to closing or a written waiver signed by the buyer, a physical inspection report and waiver signed by the buyer, and when an approved form of a sales contract was used. (*Id*. ¶ 2.) The scope of the Program was limited and did not cover every type of claim. For example, it excluded criminal proceedings; claims arising out of Plaintiff's actions outside the scope of his authority under the Agreement; criminal, malicious or intentional wrongdoing, fraud or violation of licensing laws; and other categories of claims. (*Id*. Ex. B, App. I ¶¶ 3 & 6.) Furthermore, if Plaintiff were investigated or had to defend himself before a licensing board or a similar body, Defendant would pay up to $5,000 of actually incurred attorneys' or consultant's fees. (*Id*. ¶ 5(a).) In case of a conflict of interest, the Program provided for separate representation of each party to the Agreement. (*Id*. ¶ 5(b).) The costs of the Program were paid out of an Administrative Fee, which Plaintiff was obligated to pay under the Agreement. (*Id*. Ex. A ¶ 9; Ex. B (Fee Schedule & Payment Election); Ex. B, App. I ¶ 9.)

Plaintiff argues that the Program represents an insurance policy between Defendant as the insurer and himself as the insured, and that the Administrative Fee represents an insurance premium. He argues that because Defendant is not a licensed insurer, the Program violates California insurance laws and constitutes an unlawful business act or practice under the UCL. Defendant maintains that the Program is not an insurance contract but a provision of the Agreement to allocate in advance the rights and responsibilities between the parties should a third party assert a claim.

/ / / / /

> Insurance is defined as "a contract whereby one undertakes to indemnify another against loss, damage or liability arising from a contingent or unknown event." ([Cal. Ins.] Code § 22.)  Case law has interpreted this statute as requiring two elements:  (1) a risk of loss to which one party is subject and shifting of that risk to another party; and (2) distribution of risk among similarly situated persons.

*Title Ins. Co. of Minn. v. State Bd. of Equalization*, 4 Cal.4th 715, 725-26 (1992) (second set of quotation marks and citation omitted).  The Program is not an insurance contract because the risk shifting is bilateral.  The Program does not shift the risk from Plaintiff to Defendant in exchange for a premium payment as would be the case if Defendant were Plaintiff's insurer.  Instead it shifts some of Defendant's risk on Plaintiff and *vice versa*.  For example, under California law, Defendant as the broker is subject to liability for tort claims asserted by third parties for torts caused by Plaintiff as a real estate sales person licensed to Defendant.  *See Cal. Real Estate Loans, Inc. v. Wallace*, 18 Cal. App. 4th 1575, 1581 (1993).  The Program appears to shift some of Defendant's risk under this law on Plaintiff.  In addition, unlike in the insurance context where the insurer indemnifies the insured, the Program requires Plaintiff to indemnify Defendant for damages or losses Defendant incurs resulting from claims excluded from the Program.  (Am. Comp. Ex. B ¶ 6.)

However, even if the Program served a risk-shifting function and distributed the risk of loss among similarly situated persons, it does not qualify as insurance under Insurance Code Section 22 if its principal object and purpose is not insurance:

> Rather than simply look to whether the contract involved an assumption of a risk, we will instead ask whether that assumption of risk or something else to which it is related in the particular plan is its principal object and purpose.

*Title Ins. Co. of Minn.*, 4 Cal.4th at 726 (internal quotation marks, brackets and citations omitted).

Plaintiff argues that the principal object and purpose test is inapplicable based on *Wayne v. Staples, Inc*., 135 Cal. App. 4th 466 (2006).  In *Wayne*, "[t]he trial court ruled Staples was not violating the Insurance Code by offering shipping customers declared value coverage, a form of inland marine insurance, because the offer and sale of that coverage is only incidental to the principal object of the transaction:  the shipment of the customer's package." *Id*. at 475 (footnote omitted).  The Court of Appeals reversed.  The court noted that "[t]he principal-object

test is an essential analytic tool to evaluate whether certain contracts that contain risk allocation provisions qualify as 'insurance.'" *Id*. However, because the parties had stipulated that the declared value coverage was insurance, *id*. n.3, the test was not applicable. *Id*. at 476-77. *Wayne* does not diminish the significance of the principal object and purpose test where, as here, the parties dispute whether the contract qualifies as insurance.

Plaintiff next argues that the principal object and purpose of the Agreement cannot be determined at this stage of proceedings because discovery is necessary to determine what it is. The court disagrees. *See* Cal. Civ. Code § 1639; *Transp. Guar. Co. v. Jellins*, 29 Cal.2d 242, 249 (1946) (relied exclusively on the contract language to determine its principal object and purpose). The cases cited by Plaintiff, *People, ex rel. Roddis v. Cal. Mut. Assoc.*, 68 Cal.2d 677 (1968), and *Metro. Life Ins. Co. v. State Bd. Equalization*, 32 Cal.3d 649 (1982), are inapposite here. *Roddis* addressed the issue whether an organization is an insurer or a health care service plan for purposes of the Knox-Mills Plan Act, an issue not present here. *Roddis*, 68 Cal.2d at 679. Plaintiff relies on *Metropolitan Life Insurance Company* to the extent it discusses *Roddis*. 32 Cal.3d at 656.

The principal object and purpose of the Agreement in this case is evident from its terms. It obligates Plaintiff "to use his . . . best efforts to list and sell residential real estate" exclusively on behalf of Defendant. (Am. Compl. Ex. A ¶ 2(B)&(C).) Defendant, on the other hand, is obligated to provide a branch sales office and make available to Plaintiff all current listings for that office. (*Id*. ¶ 3(A).) When Plaintiff earns a commission for services performed under the Agreement, it is divided between the parties according to a commission schedule, which is a part of the Agreement. (*Id*. ¶ 4(A).) Other parts of the Agreement, including the Program, are secondary to the principal purpose and object of dividing responsibilities and compensation related to residential real estate sales.

Under similar circumstances, California courts have found that the contract, even when it shifted the risk of loss from one party to another, was not an insurance contract so long as its principal object and purpose was not risk shifting. *See, e.g.*, *Title Ins. Co. of Minn.*, 4 Cal. 4th at 720, 722, 723-24, 725-27 (underwritten title companies, not licensed to engage in insurance

business, assumed a portion of title insurers' insurance risk); *Truta v. Avis Rent A Car Sys., Inc.*, 193 Cal. App. 3d 802, 814 (1987) (car rental agreement containing a collision damage waiver), superseded by statute as stated in *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1155 n.5 (2000); *Jellins*, 29 Cal.2d at 249, 252-53 (truck maintenance contract including contractor's promise to insure trucks for owner with insurance company); *Cal. Physicians' Serv. v. Garrison*, 28 Cal.2d 790, 809-10 (1946) (monthly membership dues in exchange for medical services).

Plaintiff seeks to distinguish this line of authority by arguing that the Program was mandatory and not optional as it was in *Truta*. Whether the risk allocation provision is mandatory or optional is not determinative of the contract's principal object and purpose. *See, e.g., Title Ins. Co. of Minn.*, 4 Cal. 4th at 725-27.

For the reasons discussed above, the principal object and purpose of the Agreement between Plaintiff and Defendant was not risk shifting. The Agreement, including the Program, therefore does not constitute an insurance contract between Plaintiff and Defendant for purposes of California Insurance Code provisions. Accordingly, Plaintiff cannot state a claim under the UCL for unlawful business acts or practices based on violation of California insurance law. Defendant's motion to dismiss and/or strike this claim is **GRANTED**.

Plaintiff requested leave to amend if Defendant's motion is granted. Rule 15 advises the court that leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Of the foregoing factors, the "prejudice to the opposing party . . . carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* (citation omitted). In light of the reasons for granting Defendant's motion, granting leave to amend to allege a UCL claim for

unlawful business acts or practices under California Insurance Code provisions would be futile. Accordingly, Plaintiff's request for leave to amend is denied.

**IT IS SO ORDERED**.

DATED: December 21, 2009

M. James Lorenz
United States District Court Judge

COPY TO:

HON. ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL